Phillip Eisenshtadt v. Commissioner.
Eisenshtadt v. Commissioner
Docket No. 21191.
United States Tax Court
1949 Tax Ct. Memo LEXIS 16; 8 T.C.M. (CCH) 1059; T.C.M. (RIA) 49283; December 12, 1949
*16 The petitioner formerly operated a retail shoe store known as the Phillip Shoe Company, as a single proprietorship. His two sons had worked in the store since they were eight or nine years old. In January, 1942, the petitioner and his two sons, then ages 24 and 18, formed a partnership. The respondent refused to recognize the youngest son, Norman, as a partner and taxed his share of the partnership income to the petitioner for 1942, 1943 and 1944. Held, the parties, in good faith and acting with a business purpose, intended to join together as partners in the present conduct of the enterprise and that Norman Eisenshtadt should be recognized as a partner in the Phillip Shoe Company, during the taxable years. George L. Cassidy, Esq., 1118 *17 Dime Bldg., Detroit 26, Mich., and William O. Loud, Esq., for the petitioner. A. J. Friedman, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the petitioner's tax liabilities as follows: Income and Victory Tax
Years
Deficiency
1943
$18,456.67
Income Tax
1944
14,742.16
Total Liability
$33,198.83
The year 1942 is also involved in this proceeding due to the forgiveness feature of the Current Tax Payment Act of 1943. The alleged deficiencies are due to the determination by the respondent that the portion of the earnings and profits of the Phillip Shoe Company, a partnership, reported as distributable to Norman Eisenshtadt, son of the petitioner and reported by him for the above years, is taxable to the petitioner. The case was submitted upon a stipulation of facts, exhibits, and oral testimony. The facts stipulated are so found. Other facts are found from the evidence. Findings of Fact The petitioner immigrated to this country from Russia in 1910, at the age of 17. At first he made his living as a carpenter. After two years he moved to Detroit where two years *18 later he opened a grocery store. In 1925 the petitioner abandoned the grocery business and opened a retail shoe store known as the Phillip Shoe Company on Hastings Street in Detroit. This business was conducted as a single proprietorship until the formation of the partnership in question in 1942. The petitioner was married in 1916. Harold, the elder of petitioner's two sons was born in 1917. Norman, the second son was born in 1923. The petitioner's sons started to work in their father's shoe store when each reached the age of eight or nine years. At first their work consisted of sweeping the store and unpacking and moving the goods. When the sons were about 12 years old they began selling shoes in the store. Later, they accompanied their father on buying trips and Harold started to buy shoes alone when he was 17 years old. The petitioner and his sons, Harold and Norman, worked long hours. The store was open on week days from nine o'clock in the morning until nine o'clock at night, until ten o'clock on Saturday, and a half day on Sunday. When Harold was graduated from high school in 1935, another shoe store was opened on Broadway Avenue in Detroit, and Harold managed this store *19 in addition to attending afternoon college classes. After a year and a half, Harold left college to devote all of his time to the business. Norman continued to work alternately in both stores when he was not attending school. The business continued to prosper and the petitioner bought investment property, including an apartment house. The life of the sons was centered around the store. They had almost no home-life. Their mother became ill after the birth of Norman and was later declared mentally incompetent. The sons did not go home to supper during week nights but ate their meals in restaurants near the store. Norman was graduated from high school in January, 1941, and from that date until June, 1942, attended college classes locally from nine to four o'clock on week days. During this period he worked long hours after school, alternating between both stores, and put in about 80 hours per week while on vacations from school. From September, 1942, to December, 1942, Norman attended the University of Michigan during the week, and worked 16 to 18 hours in the store on week-ends, having been excused from Saturday classes at his father's request. In January, 1943, Norman entered the Armed *20 Forces and served in the Army until his discharge in February, 1946. He had several furloughs while in the Army and during each returned to Detroit and spent some time working in the stores. In 1943, while Norman was in the Army, it was decided to buy another apartment house as a partnership investment. Norman was consulted as to this purchase, and also while he was in the Army, his advice and opinions were solicited concerning the personnel and merchandising problems of the business. Two days after Norman was discharged from the Army, he returned to work in the business. In October, 1946, Norman was married. In 1936 Harold and Norman first spoke to the petitioner concerning being made partners in the business. The petitioner did not believe the sons were then ready for a partnership but promised that he would agree to it at some future time. The subject of a partnership was raised in family discussions at various times between 1936 and 1940. In the latter year, Harold decided to get married and, desiring more security of income, again raised the issue of a partnership with the petitioner, but again it was refused, the petitioner saying that Norman was not ready at that time and *21 that he wanted to treat the sons alike. In 1941 the father agreed to take the sons in the business as partners. The parties then consulted an attorney and an accountant concerning the steps to be taken to form the partnership and were advised that there would possibly be some Federal income tax savings as a result of the formation of the partnership. On January 2, 1942, the petitioner executed the following: bills of sale to Norman and Harold granting them each one-third interest in the Phillip Shoe Company; an assignment of the lease on the Broadway Avenue Store to Phillip, Harold, and Norman Eisenshtadt as partners doing business as the Phillip Shoe Company. On the same date the petitioner and his wife [1] executed a quit claim deed conveying to Phillip, Harold, and Norman Eisenshtadt as partners doing business as the Phillip Shoe Company, the realty held by petitioner as investment property. On the same date, Harold and Norman each executed a promissory note, payable to the petitioner, in the amount of $27,000.77 representing the interest in the partnership transferred to each of them. The notes recite that they are non-interest bearing and are to be paid at the rate of $2,500 *22 per year beginning January 2, 1943. Up to the date of the proceedings in this Court, there had been no payment made on the two notes. The petitioner did not press his sons for payment as he believed that the notes would be security for his wife in the event of his death. On January 2, 1942, Phillip, as first party; Harold, as second party; and Norman Eisenshtadt, as third party, executed a partnership agreement in the usual form, the pertinent parts of which are as follows: WITNESSETH: "WHEREAS, first party is the owner of the retail shoe business conducted at 5203 Hastings Street and 1300 Broadway Avenue, in the city of Detroit, County of Wayne and State of Michigan, under the assumed name of PHILLIP SHOE COMPANY, and said first party is also the owner of real estate situated in the City of Detroit, County of Wayne and State of Michigan, described as: "[Here follows a description of the investment property owned by Phillip Eisenshtadt and including the apartment house on Collingwood Avenue.] * * *
"WHEREAS, said businesses have grown and expanded during the *23 past number of years by reason of the combined efforts and endeavors of all of the parties hereto; and "WHEREAS, the second and third parties have contributed their time, effort and ability in connection with promoting the success of said businesses, as a result of which the businesses have grown and expanded to a degree greater than they would have solely through the efforts of the first party; and "WHEREAS, second and third parties have heretofore become versed in the operation of said businesses and have thereby relieved the first party from the personal performance of various functions in connection with the operation thereof; and "WHEREAS, on the date hereof the first party has transferred and conveyed to second and third parties, to each an undivided one-third interest in and to said shoe business and the real property hereinabove described, subject to outstanding liabilities; and "WHEREAS, by reason of the efforts heretofore expended by the second and third parties in contributing to the growth and expansion of said businesses and the capital investment in the said businesses by second and third parties, all of the parties hereto are desirous of creating a partnership *24 and continuing the operation of said businesses as co-partners upon the terms and conditions hereinafter set forth; * * *
"7. The parties hereto shall be entitled to draw from said businesses such salaries as may be agreed upon between them from time to time. Each of the parties shall also be entitled to draw such other sums as shall be agreed upon between them from time to time, and all sums drawn by the partners shall be charged against their share of the earnings of said business. "8. The parties hereto shall share equally in the profits and losses of said businesses. Said profits and losses shall be determined after deducting any salaries that may be agreed upon between the parties hereto as provided for herein. "9. Each partner shall devote all of his time and attention to the partnership businesses and shall use his best efforts to promote the interest of said firm, and the partnership businesses shall be operated for the mutual benefit and advantages of the parties hereto. "10. The funds of this partnership shall be kept on deposit in the firm name in any bank that the partners may from time to time agree upon. All checks, drafts and other commercial papers may *25 be signed on behalf of the firm by any of the parties hereto. * * *
"12. * * * The net profits, or net loss, computed in the manner herein provided for, shall be divided equally between the parties hereto, and the account of each shall be debited or credited, as the case may be, with their proportionate share thereof;" * * *
In July, 1942, a signature card for the partnership bank account was filed empowering Harold and Phillip Eisenshtadt to sign checks drawn upon the partnership account. Norman was not so empowered because there was no need, the parties feeling that two authorized signatures were sufficient. In April, 1946, after Norman returned to work in the store, the volume of business and, consequently, the amount of bookkeeping having increased over 1943, a new card was filed empowering all three partners to sign checks. Thereafter, Norman exercised this power. On May 27, 1942, a "Certificate of Co-Partnership" was filed with the County Clerk of Wayne County, Michigan, indicating that the co-partners in the Phillip Shoe Company were Phillip, Harold and Norman Eisenshtadt. The parties who sold shoes to the firm were notified of its change from a single proprietorship *26 to a partnership. Various insurance policies were issued to Phillip, Harold, and Norman Eisenshtadt doing business as the Phillip Shoe Company. On January 2, 1942, different sets of books were opened for each of the three business activities: the Broadway Avenue store, the Hastings Street store, and the Collingwood Avenue apartment house with capital accounts for each of the partners on each set of books. A similar set of books was opened for the apartment house on Seward Avenue when it was acquired in 1943. When the partnership books were opened, the book value of each of the business activities was divided equally among the capital accounts of the three partners, and the profits of the partnership since have been divided equally among the three partners. The petitioner's decision to take his sons into the business as partners was influenced by several factors. His sons had demonstrated their ability in the business. Harold had successfully managed one store from the time he left high school. Norman had assisted his father and his brother in the conduct of the business and replaced either of them when necessary. The petitioner's wife beingmentally incompetent, it was his desire *27 that the business would continue under the management of his sons in the the event of his, the petitioner's death. The petitioner believed that in this way he would better provide for the security of his wife. It was the intention of Harold and Phillip Eisenshtadt to include Norman as a partner in the business and Norman understood himself to be a partner. The money Norman withdrew from the partnership has never been subject to the control of the petitioner either as to amount withdrawn or its disposition by Norman. The withdrawals of the partners during the taxable years were as follows.. 1942
1943
1944
Phillip Eisenshtadt
$21,115.59
$33,701.92
$11,313.97
Harold Eisenshtadt
6,720.28
20,619.24
16,192.79
Norman Eisenshtadt
1,805.92
9,364.30
10,482.58
The partnership duly filed partnership returns for the years 1942 to 1944, inclusive, reporting the petitioner and his two sons as partners. The distributive shares of the profits of the business as shown by the partnership returns for these years were as follows: 1942
1943
1944
Phillip Eisenshtadt
$26,140.70
$11,708.65
$22,184.91
Harold Eisenshtadt
26,140.68
11,708.65
22,184.91
Norman Eisenshtadt
26,140.68
11,708.65
22,184.90
*28 The respondent determined that the share of income attributed to Norman in the partnership tax returns for the calendar years 1942, 1943, and 1944 was taxable to the petitioner under the provisions of section 22(a) of the Internal Revenue Code. Opinion VAN FOSSAN, Judge: The sole issue in this case is whether or not Norman Eisenshtadt should be recognized in the taxable years 1942, 1943, and 1944 as a partner with his father, the petitioner, and his brother, Harold Eisenshtadt, in a partnership doing business as the Phillip Shoe Company. The respondent does not dispute the existence of the Phillip Shoe Company as a partnership but has refused to recognize Norman as a partner taxing his interest in the partnership profits to the petitioner. The correctness of respondent's determination depends upon whether or not the parties, in good faith and acting with a business purpose, intended to join together as partners in the present conduct of the enterprise. Commissioner v. Tower, 327 U.S. 280; and Commissioner v. Culbertson, 337 U.S. 733. The petitioner, from a modest beginning, built his business step by step. When the first store *29 succeeded he opened another. As the business prospered he expanded his interest and bought apartment houses as investment property. In all these things he was assisted by his sons Harold and Norman. The petitioner, in 1936, agreed to form, some day, the partnership entered into finally in 1942. The sons understood that eventually they would become partners with their father. The partnership was formalized on January 2, 1942, when Norman was 18 years old. From that date until June, 1942, Norman worked long hours weekly in the business and also attended local college classes. During the following summer vacation, Norman worked about 80 hours per week in the business. From September to December, 1942, Norman attended classes at the University of Michigan, Monday through Friday, and worked 16 to 18 hours on Saturday and Sunday. The respondent states that Norman "was absent in military service during most of the period before the Court." This fact is not important if we reach the conclusion that Norman became a partner before he entered upon such military service and continued to be such thereafter. See, Footnote 6, Commissioner v. Culbertson, supra.
In his brief the respondent further *30 contends that "the casting of the transaction in the form of a sale of a partnership interest to Norman and Harold was a sham." We do not so read the record. The partnership here in question was formed for a business purpose. It was the intention of the parties to perpetuate the business through the sons. The formalization of their plans in the partnership agreement, the paper change in the organization of the business, and the holding out as partners were but steps taken in the realization of the over-all plan that the sons as partners would share the business with their father. There was no indication that the petitioner relied on anyone else to take the place of his sons in the management of the business. It is significant that the partnership returns of income for the taxable years show no deduction from the gross profits of the shoe business for cost of labor. This indicates the degree to which the parties depended upon each other in the day to day operation of the business. In his brief the respondent points to the amounts of money drawn from the business, stating that, "Norman drew only $458.65 from the business during 1942, while his father and Harold drew $10,635.29 and *31 $5,764.25, respectively, during the same year." We have set forth the withdrawals of the partners in the findings of fact. Looking at the situation realistically, Norman's need for the money was not great at the time. He was not married and his opportunities for social life were limited by his work. We are not persuaded by the comparison of withdrawals that the partnership was not real. The books correctly showed the distributions and there is no evidence that petitioner retained control of Norman's share of income. We conclude on the record made that the true intent of the parties, acting in good faith and with a business purpose, was to join together in the present conduct of the enterprise. We hold, therefore, that Norman Eisenshtadt should be considered a partner in the Phillip Shoe Company during 1942, 1943 and 1944, and his share of the partnership income during those years should not be taxed to the petitioner. Decision will be entered for the petitioner. Footnotes
1. Note: Whether the wife acted by a guardian does not appear. It is immaterial in our consideration.↩